**TIMOTHY A. SCOTT** (SBN 215074)
tscott@mckenziescott.com
**MICHELE A. McKENZIE** (SBN 209657)
mmckenzie@mckenziescott.com
**NICOLAS O. JIMENEZ** (SBN 295057)
njimenez@mckenziescott.com
MCKENZIE SCOTT PC
1350 Columbia Street, Suite 600
San Diego, California 92101
Tel: (619) 794-0451
Fax: (619) 202-7461

*Attorneys for* Jane Doe

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE,<br><br>           Plaintiff,<br><br>vs.<br><br>COUNTY OF<br>SANTA BARBARA,<br>JOSHUA ELIZALDE, &<br>JOHN DOES 1-10,<br><br>           Defendants. | Case No.: _____<br><br>COMPLAINT FOR DAMAGES<br>FOR VIOLATIONS OF:<br>1. 42 U.S.C. § 1983 (against the County of Santa Barbara for Official Policy, Practice or Custom);<br>2. 42 U.S.C. § 1983 (against the County of Santa Barbara for Ratification of Misconduct);<br>3. 42 U.S.C. § 1983 (against the County of Santa Barbara for Failure to Train);<br>4. 42 U.S.C. § 1983 (against Elizalde);<br>5. Bane Act, Cal. Civ. Code § 52.1 (against all Defendants);<br>6. Ralph Act, Cal. Civ. Code § 51.7 (against all Defendants); |

COMPLAINT - 1

7. Unruh Act, Cal. Civ. Code § 51 (against all Defendants);
8. Gender violence, Cal. Civ. Code § 52.4 (against Defendant Elizalde);
9. Sexual harassment, Cal. Civ. Code § 51.9 (against Defendant Elizalde);
10.   Assault (against all Defendants);
11.   Sexual battery (against all Defendants);
12.   False imprisonment (against all Defendants); and
13.   Intentional infliction of emotional distress (against all Defendants).

AND DEMAND FOR JURY TRIAL.

COMPLAINT - 2

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................6

INTRODUCTION .................................................................7

THE PARTIES....................................................................8

JURISDICTION AND VENUE ..................................................9

BACKGROUND FACTS .........................................................9

DEFENDANT ELIZALDE RESPONDS TO A CALL TO THE SHERIFF'S OFFICE FOR ASSISTANCE WITH TRESPASSERS .......10

GROOMING OF PLAINTIFF – GAINING TRUST THROUGH OFFERS OF PROTECTION ................................................................12

ENCOUNTER IN GOLETA – UNWANTED TOUCHING OF PLAINTIFF'S THIGH AND NECK..........................................16

ENCOUNTER IN LOS OLIVOS – UNWANTED TOUCHING OF PLAINTIFF AND PROMISES TO PROTECT HER ...........................18

ENCOUNTER IN BUELLTON – MAKING PLAINTIFF SIT ON HIS LAP AND TRYING TO KISS PLAINTIFF ...............................19

ENCOUNTER IN SOLVANG – TRYING TO KISS PLAINTIFF AND TRYING TO GET PLAINTIFF TO ORALLY COPULATE HIM IN HIS PATROL VEHICLE............................................................21

ENCOUNTER IN SANTA YNEZ – TRYING TO KISS PLAINTIFF, GRABBING HER BREAST AND GENITALS, AND TRYING TO GET PLAINTIFF TO MASTURBATE HIM IN HIS PATROL VEHICLE.....23

ENCOUNTER AT PLAINTIFF'S RESIDENCE – ASSAULT, FALSE IMPRISONMENT, AND SEXUAL BATTERY ..................................25

COMPLAINT - 3

DISCLOSURE TO SANTA BARBARA COUNTY SHERIFF'S OFFICE ...................................................................................29

SANTA BARBARA COUNTY SHERIFF'S OFFICE DESCRIBES REPORTING OF ASSAULTS AND SEXUAL BATTERIES BY ON-DUTY SHERIFF'S DEPUTY AS ACCOMPLISHING NOTHING OTHER THAN GIVING THE DEPUTY A "PAID VACATION" ..........................32

CLAIM I – 42 U.S.C. § 1983 (Defendant County for official policy, practice or custom) ...................................................................................36

CLAIM II – 42 U.S.C. § 1983 (Defendant County for ratification of misconduct) ...................................................................................38

CLAIM III – 42 U.S.C. § 1983 (Defendant county for failure to train)..39

CLAIM IV – 42 U.S.C. § 1983 (Defendant Elizalde)...............................41

CLAIM V - Violation of civil rights (Bane Act, Cal. Civ. Code § 52.1) (All defendants) ...................................................................................42

CLAIM VI - Violation of civil rights (Ralph Act - Cal. Civ. Code § 51.7) (All defendants) ...................................................................................43

CLAIM VII - Violation of civil rights (Unruh Act - Cal. Civ. Code § 51) (All defendants) ...................................................................................44

CLAIM VIII - Violation of civil rights-gender violence (Cal. Civ. Code § 52.4(c) (Defendant Elizalde)...............................................................45

CLAIM IX - Violation of civil rights-sexual harassment (Cal. Civ. Code § 51.9) (Defendant Elizalde)...............................................................46

CLAIM X – ASSAULT (All defendants) ...................................................47

CLAIM XI – SEXUAL BATTERY (All defendants) ...............................48

CLAIM XII – FALSE IMPRISONMENT (All defendants)....................49

COMPLAINT - 4

CLAIM XIII – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (All defendants) ........................................................ 50

PRAYER FOR RELIEF ........................................................ 51

COMPLAINT - 5

# TABLE OF AUTHORITIES

**Cases**

*Mary M. v. City of Los Angeles*, 54 Cal.3d 202 (1991).....................passim

**Statutes**

28 U.S.C. § 1331............................................................................9

28 U.S.C. § 1343(a)(3) & (4) .........................................................9

28 U.S.C. § 1391............................................................................9

42 U.S.C. § 1983.....................................................................passim

42 U.S.C. § 1988..........................................................................51

Cal. Civ. Code § 51.................................................................7, 44

Cal. Civ. Code § 51.7..............................................................7, 43

Cal. Civ. Code § 51.9...................................................................7

Cal. Civ. Code § 52.....................................................................51

Cal. Civ. Code § 52.1..............................................................7, 42

Cal. Civ. Code § 52.4..............................................................7, 45

California Gov't Code § 900.4, et seq. ..........................................9

**Other Authorities**

Santa Barbara County Sheriff's Office Policy 1065.2(d)..............33, 34

Santa Barbara County Sheriff's Office Policy 336........................31

COMPLAINT - 6

# INTRODUCTION

1. This lawsuit concerns violations of 42 U.S.C. § 1983 and violations of Cal. Civ. Code §§ 51, 51.7, 52.1, 52.4, and 51.9 as well as additional state causes of action, including: assault, sexual battery, false imprisonment, and intentional infliction of emotional distress.

2. Plaintiff Jane Doe was the victim of repeated sexual harassment, assaults, and sexual batteries by an on-duty Santa Barbara County Sheriff's Deputy from January through February 2023.

3. The Sheriff's Deputy used his knowledge of Plaintiff as a survivor of domestic violence with an active protection order against her ex-partner to manipulate Plaintiff into permitting repeated contact with him under the guise of "protecting" Plaintiff from further violence.

4. Instead of "protecting" her, the Sheriff's Deputy repeatedly sexually harassed, abused, and battered Plaintiff while on duty with the Santa Barbara County Sheriff's Office.

5. Following a purported internal investigation, Defendant County's Santa Barbara County Sheriff's Office informed Plaintiff that the only thing she accomplished by reporting the sexual harassment,

COMPLAINT - 7

assaults, and sexual batteries was giving the Sheriff's Deputy a "paid vacation."

6. This lawsuit follows.

## THE PARTIES

7. Plaintiff Jane Doe is an individual who resides in Santa Barbara County within the Central District of California.

8. Defendant County of Santa Barbara is a public entity within the Central District of California charged with supervising the official conduct of the Santa Barbara County Sheriff.

9. Defendant Joshua Elizalde is an individual who, on information and belief, resides in Santa Barbara County in the Central District of California and, at all times relevant to this complaint, was employed as a Sheriff's Deputy with the Santa Barbara County Sheriff's Office.

10.   Defendant John Does 1-10 are supervisors within the Santa Barbara County Sheriff's Office responsible for training and supervising Sheriff Deputies.

COMPLAINT - 8

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) & (4) and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

12. Venue is appropriate in this Court because all of the acts alleged herein occurred in Santa Barbara County within the Central District of California. *See* 28 U.S.C. § 1391.

13. Prior to filing this complaint, Plaintiff also timely filed a claim for damages pursuant to California Gov't Code § 900.4, et seq. with the County of Santa Barbara.

14. This complaint is timely filed.

## BACKGROUND FACTS

15. Plaintiff is a survivor of domestic violence who sought—and received—assistance from the Santa Barbara County Sheriff's Office from 2021 through 2022.

16. In 2021 and again in 2022, Plaintiff sought—and received—restraining orders against her ex-boyfriend.

17. At the time of the incidents described herein, there was an active restraining order against Plaintiff's ex-boyfriend.

COMPLAINT - 9

18.   In all of his interactions with Plaintiff, Defendant Elizalde was on-duty and in uniform.

**DEFENDANT ELIZALDE RESPONDS TO A CALL TO THE SHERIFF'S OFFICE FOR ASSISTANCE WITH TRESPASSERS**

19.   On December 30, 2022, Plaintiff contacted the Santa Barbara County Sheriff's Office to report that unknown individuals were seen on Plaintiff's home security footage trespassing at Plaintiff's residence.

20.   Plaintiff was not home at the time but had seen the trespassers remotely via the residence's security system.

21.   Sheriff's Deputy Defendant Joshua Elizalde, who was on uniformed patrol, was dispatched to investigate the reported trespassing at Plaintiff's residence.

22.   Plaintiff returned to her residence to complete the incident report of the trespassing with Defendant Elizalde.

23.   When Plaintiff returned to her residence, Defendant Elizalde was already inside the perimeter gate of the property, waiting for Plaintiff at her residence.

24.    Plaintiff explained to Defendant Elizalde that she is hypervigilant about her security because of several instances of domestic violence with her ex-boyfriend and ongoing protection orders.

25.    Plaintiff told Defendant Elizalde that she is deathly afraid of her ex-boyfriend against whom she has a restraining order.

26.    Defendant Elizalde asked Plaintiff to send him copies of the home security footage for the trespassing incident report.

27.    Defendant Elizalde gave Plaintiff his business card.

28.    At the time, Plaintiff was in a dispute with her landlord, and the unknown individuals had been dispatched to the residence—unbeknownst to Plaintiff—by her landlord.

29.    Plaintiff sent Defendant Elizalde the requested video footage for his incident report.

30.    On January 20, 2023, Plaintiff requested Defendant Elizalde provide her with a copy of the trespassing incident report that she could forward to her attorney in the landlord-tenant dispute.

31.    Defendant Elizalde asked Plaintiff to call him to discuss.

32.    During phone calls during this period in January 2023, Defendant Elizalde asked Plaintiff whether she had a boyfriend.

COMPLAINT - 11

33.     Plaintiff explained that she did not have a boyfriend and asked why Defendant Elizalde was asking that question.

34.     Defendant Elizalde claimed that he was asking to figure out if that was a reason why Plaintiff's landlord might be sending people to inspect the residence.

## GROOMING OF PLAINTIFF – GAINING TRUST THROUGH OFFERS OF PROTECTION

35.     Over the following weeks in January and February 2023, while Defendant Elizalde was preparing the trespassing incident report, he began speaking regularly with Plaintiff on the phone and via text message.

36.     Defendant Elizalde presented himself to Plaintiff as a "friend" and would chat and flirt with Plaintiff on the phone and text with her.

37.     Defendant Elizalde informed Plaintiff that he was a "good listener" and if there was anything she wanted "to vent or talk about" to let him know.

38.     Defendant Elizalde contacted Plaintiff from multiple phone numbers.

COMPLAINT - 12

39.  Plaintiff confided in Defendant Elizalde that she was terrified of her ex-boyfriend, against whom she had an active restraining order.

40.  Defendant Elizalde offered to Plaintiff that he could patrol around her residence while on duty to try and keep an eye on her safety.

41.  Defendant Elizalde used his position as a Sheriff's Deputy to gain Plaintiff's trust and, subsequently, to sexually harass, assault, and batter her.

42.  Defendant County and Defendant John Does 1-10 failed to create policies governing appropriate interactions of Sheriff Deputies including Defendant Elizalde with domestic violence victims.

43.  Defendant County and Defendant John Does 1-10 failed to properly train Defendant Elizalde on the special vulnerability of domestic violence victims.

44.  Defendant County and Defendant John Does 1-10 failed to properly supervise Defendant Elizalde's encounters with domestic violence victims, including Plaintiff.

45.  During their frequent telephone calls, Plaintiff would ask Defendant Elizalde repeatedly for the trespassing incident report so she could provide it to her attorney in the landlord-tenant dispute.

COMPLAINT - 13

46.    Plaintiff would also text Defendant Elizalde and ask him for the incident report.

47.    Defendant Elizalde asked Plaintiff if her ex-boyfriend was bothering her, informing her that he could see him on his computer system, and that the ex-boyfriend was roaming in her area.

48.    Defendant Elizalde would also regularly meet up with Plaintiff at her residence.

49.    Defendant Elizalde would regularly call Plaintiff and inform her that he was patrolling in her area and that he could be at her home very quickly.

50.    Defendant Elizalde asked Plaintiff not to tell anyone that he had been visiting her residence because, he explained, he wouldn't be able to patrol her area anymore if people thought he was taking time away from other cases by protecting her.

51.    Defendant Elizalde presented his visits to Plaintiff as favors that helped in keeping her physically safe from her ex-boyfriend.

52.    Defendant County and Defendant John Does 1-10 failed to properly supervise Defendant Elizalde during this period and failed to stop his nascent improper grooming of Plaintiff.

COMPLAINT - 14

53.   Defendant Elizalde fraudulently abused his authority as a Sheriff's Deputy by repeatedly telling Plaintiff he would keep her safe from her ex-boyfriend if she did what he asked.

54.   Before visiting her residence, Defendant Elizalde would often ask Plaintiff if her home security system was recording and request that she turn off the cameras before he arrived.

55.   On information and belief, Defendant Elizalde had the gate code to Plaintiff's residence from his initial visit to investigate the reported trespassing and continued to use it to gain access Plaintiff's rented property.

56.   At one point while visiting Plaintiff at her home, Defendant Elizalde showed Plaintiff his government-issued gear, including his handcuffs.

57.   Defendant Elizalde said he would "show" Plaintiff how the handcuffs worked.

58.   Defendant Elizalde placed the handcuffs on Plaintiff's wrists.

59.   Plaintiff did not like being in handcuffs and wanted them removed.

COMPLAINT - 15

60.    Plaintiff had to expressly request Defendant Elizalde remove them from her wrists.

61.    Defendant Elizalde giggled in response.

62.    Defendant Elizalde then removed the handcuffs, appearing to enjoy Plaintiff's fear of having on the handcuffs.

63.    Throughout January and February 2023, Defendant Elizalde engaged in a fraudulent campaign of manipulation leading Plaintiff to believe that she needed to continue to agree to see him to be protected by the Santa Barbara County Sheriff's Office.

64.    But Defendant Elizalde's manipulation instead turned into sexual harassment, assault, sexual battery, false imprisonment, and gender violence against Plaintiff.

**ENCOUNTER IN GOLETA – UNWANTED TOUCHING OF PLAINTIFF'S THIGH AND NECK**

65.    In late January 2023, Defendant Elizalde contacted Plaintiff to go over the trespassing incident report at a satellite Sheriff's office in Goleta, California.

66.    Plaintiff met Defendant Elizalde there.

COMPLAINT - 16

67.    Defendant Elizalde placed Plaintiff in a private room and had her sit down.

68.    Defendant Elizalde yanked the chair Plaintiff was sitting on, jerking her towards him.

69.    Plaintiff was frightened by Defendant Elizalde's actions.

70.    Defendant Elizalde explained that he just really liked Plaintiff.

71.    Plaintiff was scared and asked to go outside for a walk, which Defendant Elizalde permitted.

72.    But Defendant Elizalde eventually coaxed Plaintiff back into the office.

73.    Once back in the office, Defendant Elizalde started rubbing Plaintiff's thigh with his hand.

74.    Defendant Elizalde also put his hand on Plaintiff's neck by her jaw.

75.    Defendant Elizalde then slid his hand around to the side of Plaintiff's neck, caressing her and moving her hair.

76.    Defendant Elizalde's physical contact was unwanted and unwelcome.

77.    Plaintiff made an excuse to leave the office and return home.

COMPLAINT - 17

78.    On information and belief, Defendant County failed to have policies in place governing appropriate behavior during encounters with members of the public while at a Sheriff-operated property.

79.    Defendant County and Defendant John Does 1-10 failed to properly supervise Defendant Elizalde's encounters with members of the public while at a Sheriff-operated property.

## ENCOUNTER IN LOS OLIVOS – UNWANTED TOUCHING OF PLAINTIFF AND PROMISES TO PROTECT HER

80.    Defendant Elizalde asked Plaintiff to meet him in late January 2023 in the city of Los Olivos.

81.    When Plaintiff arrived, Defendant Elizalde instructed Plaintiff to get into his patrol vehicle.

82.    Once inside his patrol vehicle, Defendant Elizalde showed Plaintiff his service computer and rifle.

83.    Defendant Elizalde showed Plaintiff how he could see other deputies on his computer, where they are and when they approached his location.

84.    Defendant Elizalde then started staring intensely at Plaintiff and began holding her shoulder and, eventually, the back of her neck.

COMPLAINT - 18

85.    Defendant Elizalde's physical contact was unwanted and unwelcome.

86.    Defendant Elizalde told Plaintiff that he cared about her and that he would protect her.

## ENCOUNTER IN BUELLTON – MAKING PLAINTIFF SIT ON HIS LAP AND TRYING TO KISS PLAINTIFF

87.    At the start of February 2023, Defendant Elizalde called Plaintiff and asked her to meet him at the Buellton Sheriff's Office to review the trespassing incident report.

88.    At the Sheriff's Office, Defendant Elizalde asked Plaintiff if her ex-boyfriend had called her.

89.    Defendant Elizalde informed Plaintiff that he would be there to protect her if anything were to happen.

90.    Inside the office, Defendant Elizalde removed his body camera, and informed Plaintiff that he had to write a warrant.

91.    Defendant Elizalde directed Plaintiff to sit down.

92.    Defendant Elizalde moved his chair close to Plaintiff's chair and put his arms around her.

COMPLAINT - 19

93.   Defendant Elizalde then moved Plaintiff from her chair and had her sit on his lap.

94.   While on his lap, Defendant Elizalde started to rub her thighs.

95.   Defendant Elizalde acted with malice and oppression as he pushed Plaintiff's hair out of her face and tried to kiss her while holding her on his lap.

96.   Plaintiff could feel Defendant Elizalde's erect penis through his uniform pants.

97.   Plaintiff removed herself from his lap and returned to her chair.

98.   Defendant Elizalde's physical contact was unwanted, unwelcome, and offensive.

99.   Defendant Elizalde informed Plaintiff that he would do anything she wanted.

100.  Defendant Elizalde indicated he wanted to show Plaintiff an adjacent private room.

101.  Plaintiff said "no."

102.  Defendant Elizalde informed Plaintiff that he would be her "slave boy."

COMPLAINT - 20

103.  Plaintiff started crying, told Defendant Elizalde she wanted to go home, and left the office.

104.  Defendant Elizalde later called Plaintiff and apologized for his behavior and promised it would not happen again.

105.  On information and belief, Defendant County failed to have policies in place governing appropriate behavior during encounters with members of the public while at a Sheriff-operated property.

106.  Defendant County and Defendant John Does 1-10 failed to properly supervise Defendant Elizalde's encounters with members of the public while at a Sheriff-operated property.

**ENCOUNTER IN SOLVANG – TRYING TO KISS PLAINTIFF AND TRYING TO GET PLAINTIFF TO ORALLY COPULATE HIM IN HIS PATROL VEHICLE**

107.  Defendant Elizalde again called Plaintiff in February 2023 and asked her to meet him at a park in Solvang because he needed additional information for the trespassing incident report.

108.  Defendant Elizalde was in uniform and on duty.

109.  Defendant Elizalde asked Plaintiff to sit in his patrol car with him.

COMPLAINT - 21

110.  Defendant Elizalde told Plaintiff that he cared about her and thought she was pretty.

111.  Defendant Elizalde pulled Plaintiff towards him by gripping the back of her head.

112.  Defendant Elizalde tried to kiss Plaintiff.

113.  Plaintiff pulled away.

114.  Defendant Elizalde acted with malice and oppression as he placed Plaintiff's hand on his genital-area multiple times.

115.  Plaintiff pulled away multiple times.

116.  Defendant Elizalde held Plaintiff's hand and she started to cry and told him "no."

117.  Defendant Elizalde grabbed Plaintiff and tried to kiss her again.

118.  Plaintiff told him "no."

119.  Defendant Elizalde placed Plaintiff's hand on the back of his head and told her to rub his head.

120.  Plaintiff was crying during this encounter and informed Defendant Elizalde that she wanted to go home.

121.  Defendant Elizalde continued to try to get Plaintiff to kiss him.

COMPLAINT - 22

122. Defendant Elizalde acted with malice and oppression as he continued to try to place Plaintiff's hands on his genital-area.

123. Defendant Elizalde removed his erect penis from his uniform pants.

124. Defendant Elizalde acted with malice and oppression as he grabbed Plaintiff's head to move her towards his genital-area in an attempt to get her to orally copulate him.

125. Plaintiff moved away from Defendant Elizalde.

126. Defendant Elizalde's physical contact was unwanted, unwelcome, and offensive.

127. Plaintiff left to go home, crying in her car and at home.

128. Defendant Elizalde called Plaintiff and apologized.

**ENCOUNTER IN SANTA YNEZ – TRYING TO KISS PLAINTIFF, GRABBING HER BREAST AND GENITALS, AND TRYING TO GET PLAINTIFF TO MASTURBATE HIM IN HIS PATROL VEHICLE**

129. Defendant Elizalde asked Plaintiff to meet him in Santa Ynez in early February 2023.

130. Defendant Elizalde asked Plaintiff to sit with him in his patrol vehicle.

COMPLAINT - 23

131.  Defendant Elizalde showed Plaintiff how he could use his patrol vehicle computer to search for her restraining order.

132.  Plaintiff confided that she was feeling scared of her ex-boyfriend.

133.  Defendant Elizalde fraudulently promised he would protect her and arrest her ex-boyfriend if he violated the protection order.

134.  Defendant Elizalde asked Plaintiff if she wanted him to go arrest her ex-boyfriend that evening even though there was no violation of the protection order.

135.  Plaintiff started to cry and Defendant Elizalde promised Plaintiff that unlike "city police" he would do something to protect her if the protection order were violated.

136.  Defendant Elizalde grabbed Plaintiff's hand.

137.  Defendant Elizalde forced Plaintiff to kiss him.

138.  Defendant Elizalde fraudulently told Plaintiff that she had to listen to him in order to stay safe.

139.  Defendant Elizalde acted with malice and oppression as he unzipped his uniform pants and pulled out his penis.

140.  Defendant Elizalde acted with malice and oppression when he grabbed Plaintiff's hand repeatedly and tried to get Plaintiff to

COMPLAINT - 24

masturbate him by placing his hand over Plaintiff's hand on top of his erect penis.

141.  Plaintiff pulled away but Defendant Elizalde roughly grabbed her hand back.

142.  Plaintiff was afraid of Defendant Elizalde.

143.  Defendant Elizalde acted with malice and oppression when he put his hands under Plaintiff's shirt and started to squeeze her breasts.

144.  Defendant Elizalde grabbed her genital area over her clothes.

145.  Defendant Elizalde's physical contact was unwanted, unwelcome, and offensive.

146.  Plaintiff started crying very hard.

147.  Defendant Elizalde eventually stopped grabbing Plaintiff.

148.  Defendant Elizalde then offered to hold Plaintiff and take care of her.

149.  Plaintiff eventually left Defendant Elizalde to return home.

### ENCOUNTER AT PLAINTIFF'S RESIDENCE – ASSAULT, FALSE IMPRISONMENT, AND SEXUAL BATTERY

150.  In February 2023, Defendant Elizalde asked to see Plaintiff at her residence.

COMPLAINT - 25

151. Defendant Elizalde told Plaintiff that he really cared for her.

152. Defendant Elizalde informed Plaintiff that she needed to listen to him if she wanted him to protect her.

153. Defendant Elizalde asked Plaintiff to go upstairs because he was worried someone might see him through the windows of her home.

154. Defendant Elizalde laid down against the headboard on Plaintiff's bed and instructed her to lay next to him.

155. Defendant Elizalde got up to take off his body camera and vest but left his belt on.

156. Defendant Elizalde returned to the bed still wearing his service weapon.

157. Plaintiff was very scared.

158. Defendant Elizalde tried to hold and kiss Plaintiff.

159. Plaintiff turned away from Defendant Elizalde.

160. Defendant Elizalde acted with malice and oppression when he removed his penis from his uniform pants and tried to get Plaintiff to masturbate him with her hand.

161. Defendant Elizalde then tried to get Plaintiff to orally copulate him.

COMPLAINT - 26

162. Plaintiff resisted and tried to move away from him.

163. At some point, Defendant Elizalde removed his belt with his service weapon.

164. Defendant Elizalde put his fingers in Plaintiff's vagina.

165. Plaintiff told him to stop.

166. Plaintiff was very scared.

167. Defendant Elizalde got on top of Plaintiff.

168. Defendant Elizalde tried to penetrate Plaintiff with his penis.

169. Plaintiff was crying.

170. Defendant Elizalde acted with malice and oppression when he held Plaintiff down and used his weight to hold her in place.

171. Defendant Elizalde kept trying to penetrate Plaintiff with his penis.

172. Plaintiff kept moving to evade Defendant Elizalde and prevent him from penetrating her vagina with his penis.

173. Defendant Elizalde's physical contact was unwanted, unwelcome, and offensive.

174. Defendant Elizalde eventually stopped when Plaintiff started crying uncontrollably.

COMPLAINT - 27

175. Defendant Elizalde appeared angry and frustrated.

176. Several days after this, Defendant Elizalde asked to see Plaintiff again.

177. Defendant Elizalde apologized and said he would be patient with Plaintiff.

178. Defendant Elizalde brought Plaintiff food and a Valentine's Day card.

179. In the Valentine's Day card, Defendant Elizalde told Plaintiff that although he had not known her "long" he was "really grateful to have met [her] and spend time with [her]" and that she was an "amazing person" who Defendant Elizalde "really care[d] for."

180. In person that evening, Defendant Elizalde told Plaintiff that he cared for her.

181. Defendant Elizalde sat with Plaintiff on her couch and tried to kiss and hold her.

182. Plaintiff did not want this physical contact and started crying.

COMPLAINT - 28

## DISCLOSURE TO SANTA BARBARA COUNTY SHERIFF'S OFFICE

183.  In early March 2023, one of the detectives with the Santa Barbara County Sheriff's Office who had been assisting Plaintiff with her domestic violence case reached out to her.

184.  The detective asked to meet with Plaintiff to recover her ex-boyfriend's cell phone.

185.  Plaintiff explained to the detective that she did not feel comfortable meeting with him.

186.  The detective asked Plaintiff why she didn't want to meet with him.

187.  In response to the detective's questioning, Plaintiff explained what happened with Defendant Elizalde.

188.  The detective reported Plaintiff's experiences with Defendant Elizalde to the Santa Barbara County Sheriff's Office.

189.  This same detective revealed to Plaintiff that Defendant Elizalde had also asked the detective about Plaintiff.

COMPLAINT - 29

190. Representatives of the Santa Barbara County Sheriff's Office contacted Plaintiff and asked her to meet with them to discuss what happened.

191. One representative of the Santa Barbara County Sheriff's Office, Det. Joaquin Oliver, in requesting an in-person interview about what had happened, made comments to Plaintiff such as that he had "a wife," was "happily married" and "wouldn't try anything" with Plaintiff.

192. These comments did not put Plaintiff's mind at ease but instead struck her as odd and made her uncomfortable.

193. The representatives of the Santa Barbara County Sheriff's Office, including Det. Joaquin Oliver, did not inform Plaintiff of her right to have a confidential victim advocate or other support person with her during the interview.

194. Pursuant to the request of the Santa Barbara County Sheriff's Office's request, Plaintiff submitted to an in-person interview.

195. Plaintiff allowed the interview to be recorded at the Sheriff's Office request.

196. Plaintiff was apprehensive about this interview.

COMPLAINT - 30

197. Plaintiff did not know who she could trust within Santa Barbara County Sheriff's Office.

198. The representatives of the Santa Barbara County Sheriff's Office, including Det. Joaquin Oliver, did not "show compassion and understanding" for Plaintiff nor "make reasonable efforts to provide the support and information identified" as required by Santa Barbara County Sheriff's Office Policy 336.

199. Santa Barbara County Sheriff's Office representatives asked Plaintiff if she was wearing a wire to their meeting.

200. Santa Barbara County Sheriff's Office representatives asked Plaintiff if she had told anyone that she was going to an interview with them.

201. The nature and tone of the encounter with Santa Barbara County Sheriff's Office representatives made Plaintiff feel intimidated.

202. The Santa Barbara County Sheriff's Office representatives asked Plaintiff to allow them to download her phone.

203. Plaintiff was not advised that she could decline their request.

COMPLAINT - 31

204.  The Santa Barbara County Sheriff's Office representatives followed Plaintiff to her car to take possession of and then download her phone.

### SANTA BARBARA COUNTY SHERIFF'S OFFICE DESCRIBES REPORTING OF ASSAULTS AND SEXUAL BATTERIES BY ON-DUTY SHERIFF'S DEPUTY AS ACCOMPLISHING NOTHING OTHER THAN GIVING THE DEPUTY A "PAID VACATION"

205.  Plaintiff was later informed by the Santa Barbara County Sheriff's Office that Deputy Elizalde would not be prosecuted for his actions.

206.  The Santa Barbara County Sheriff's Office informed Plaintiff that the only thing she achieved by reporting Defendant Elizalde's behavior to them was getting him a "paid vacation."

207.  On information and belief, the Santa Barbara County Sheriff's Office detective's knowledge that Defendant Elizalde was asking about Plaintiff (the current victim in a domestic violence dispute) together with the Santa Barbara County Sheriff's Office's expressed opinion that the reporting of on-duty sexual harassment, assault, false imprisonment, and sexual battery resulted only in providing Defendant Elizalde with a "paid vacation," are indicative of a code or

COMPLAINT - 32

culture of silence within the Defendant County's Sheriff's Office used to protect each other from investigation and consequences for acts of wrongdoing.

208.  On information and belief, the Defendant County's Santa Barbara County Sheriff's Office does not have a policy expressly prohibiting the targeting of crime victims and/or members of the public for sexual harassment and abuse.

209.  On information and belief, Defendant County and Defendant John Does 1-10 do not train Sheriff Deputies to refrain from targeting crime victims and/or members of the public for sexual harassment and abuse.

210.  On information and belief, Defendant County and Defendant John Does 1-10 do not properly supervise Sheriff Deputies' interactions with crime victims and/or members of the public to ensure they are free from sexual harassment and abuse.

211.  Defendant County's Sheriff's Office Policy 1065.2(d) requires deputies to "refrain from developing or maintaining personal . . . relationships with victims, witnesses or other individuals during the course of or as a direct result of any official contact."

COMPLAINT - 33

212.  But, on information and belief, Defendant County's Sheriff's Office does not have any practices in place to ensure that Policy 1065.2(d) is not violated.

213.   On information and belief, Defendant County and Defendant John Does 1-10 do not train Sheriff Deputies on how to avoid violating Policy 1065.2(d).

214.  Even though Defendant County's Sheriff's Office has a policy that allegations of serious misconduct, such as those found in this case, should result in Plaintiff being requested to submit a "citizen complaint form" for investigation and transmission to the Professional Standards Unit, on information and belief no such form was ever completed here, again indicative of a code or culture of silence aimed at protecting their own from investigation and consequences for acts of wrongdoing.

215.  On information and belief, Defendant Elizalde has since either been terminated or voluntarily resigned from the Santa Barbara County Sheriff's Office.

216.  Despite all of the foregoing, Defendant County continues to use images of Defendant Elizalde in their paid promotional materials,

COMPLAINT - 34

including, at a minimum, recruitment videos for the Santa Barbara County Sheriff's Office accessible to the general public.

217.  This continued promotion of Defendant Elizalde, despite the actual knowledge of his misconduct with Plaintiff, is an indication of a code or culture of silence within the Santa Barbara County Sheriff's Office designed to protect Sheriff Deputies from consequences for acts of wrongdoing.

218.  This continued promotion of Defendant Elizalde, despite the actual knowledge of his misconduct with Plaintiff, is also an indication of the Santa Barbara County Sheriff's Office's ratification of his illegal behavior.

219.  As a result of the foregoing conduct of Defendant Elizalde as well as the failure of Defendant County and Defendant John Does 1-10 to act to prevent or mitigate, train against, properly supervise, enact policies prohibiting, and ultimately ratifying the sexual harassment, assaults, and sexual batteries, Plaintiff suffered and continues to suffer humiliation, severe emotional distress, anxiety, suicidal ideation, post-traumatic stress disorder, sleep disturbance, feelings

COMPLAINT - 35

of hopelessness, depression, and other severe impacts on her physical

and mental wellbeing.

### CLAIM I – 42 U.S.C. § 1983 (DEFENDANT COUNTY FOR OFFICIAL POLICY, PRACTICE OR CUSTOM)

220.  Plaintiff hereby alleges and incorporates by reference each and

every allegation contained in paragraphs 1 through 219 above,

inclusive.

221.  Defendant Elizalde's sexual harassment, gender violence, false

imprisonment, sexual assaults and batteries occurred while he was

on duty and in uniform as a peace officer with the Santa Barbara

County Sheriff's Office.

222.  Defendant Elizalde was exercising his authority as a peace officer

with the Santa Barbara County Sheriff's Office in these encounters

with Plaintiff.

223.  The sexual harassment, gender violence, false imprisonment,

sexual assaults and batteries resulted from the use of Defendant

Elizalde's authority as a peace officer.

224.  Hence, Defendant Elizalde was acting under color of state law.

COMPLAINT - 36

225. The acts of Defendant Elizalde deprived Plaintiff of her rights under the U.S. Constitution, including her rights under the Fourth and Fourteenth Amendments.

226. On information and belief, Defendant Elizalde acted pursuant to an expressly adopted official policy or widespread or longstanding practice or custom of Defendant County.

227. On information and belief, Santa Barbara County Sheriff's Office has a code of silence that protects Sheriff's Deputies from investigation and consequences from wrongdoing.

228. Defendant County's official policy or widespread or longstanding practice or custom caused the deprivation of Plaintiff's rights by Defendant Elizalde.

229. That is, Defendant County's official policy or widespread or longstanding practice or custom is so closely related to the deprivation of Plaintiff's rights as to be the moving force that caused the ultimate injury.

230. Plaintiff suffered personal injury and damages as a result of Defendant's conduct in an amount to be proven at trial.

COMPLAINT - 37

## CLAIM II – 42 U.S.C. § 1983 (DEFENDANT COUNTY FOR RATIFICATION OF MISCONDUCT)

231.  Plaintiff hereby alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 219 above, inclusive.

232.  Defendant Elizalde's sexual harassment, gender violence, sexual assaults and batteries occurred while he was on duty and in uniform as a peace officer with the Santa Barbara County Sheriff's Office.

233.  Defendant Elizalde was exercising his authority as a peace officer with the Santa Barbara County Sheriff's Office in these encounters with Plaintiff.

234.  The sexual harassment, gender violence, sexual assaults and batteries resulted from the use of Defendant Elizalde's authority as a peace officer.

235.  Hence, Defendant Elizalde was acting under color of state law.

236.  The acts of Defendant Elizalde deprived Plaintiff of particular rights under the U.S. Constitution, including her rights under the Fourth and Fourteenth Amendments.

237.  Sheriff Bill Brown acted under color of state law.

COMPLAINT - 38

238.  Sheriff Bill Brown had final policymaking authority from Defendant County of Santa Barbara concerning the acts of Defendant Elizalde.

239.  Sheriff Bill Brown ratified Defendant Elizalde's actions that is Sheriff Bill Brown knew of and specifically made a deliberate choice to approve Defendant Elizalde's acts and the basis for them.

240.  Plaintiff suffered personal injury and damages as a result of Defendants' conduct in an amount to be proven at trial.

## CLAIM III – 42 U.S.C. § 1983 (DEFENDANT COUNTY FOR FAILURE TO TRAIN)

241.  Plaintiff hereby alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 219 above, inclusive.

242.  Defendant Elizalde's sexual harassment, gender violence, sexual assaults and batteries occurred while he was on duty and in uniform as a peace officer with the Santa Barbara County Sheriff's Office.

243.  Defendant Elizalde was exercising his authority as a peace officer with the Santa Barbara County Sheriff's Office in these encounters with Plaintiff.

COMPLAINT - 39

244.  The sexual harassment, gender violence, sexual assaults and batteries resulted from the use of Defendant Elizalde's authority as a peace officer.

245.  Hence, Defendant Elizalde was acting under color of state law.

246.  The acts of Defendant Elizalde deprived Plaintiff of her rights under the U.S. Constitution, including her rights under the Fourth and Fourteenth Amendments.

247.  The training policies of Defendant County were not adequate to train its sheriff's deputies to handle the usual and recurring situations with which they must deal.

248.  Defendant County was deliberately indifferent to the obvious consequences of its failure to train its Sheriff Deputies.

249.  The failure of Defendant County to provide adequate training caused the deprivation of Plaintiff's rights by Defendant Elizalde, that is Defendant County's failure to train played a substantial part in bringing about or actually causing the injury or damage to Plaintiff.

250.  Plaintiff suffered personal injury and damages as a result of Defendant's conduct in an amount to be proven at trial.

COMPLAINT - 40

**CLAIM IV – 42 U.S.C. § 1983 (DEFENDANT ELIZALDE)**

251.  Plaintiff hereby alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 219 above, inclusive.

252.  At all times relevant herein, Defendant Elizalde was acting under color of state law and color of authority, using his power as a Sheriff's Deputy with the Santa Barbara County Sheriff's Office in his encounters with Plaintiff Jane Doe.

253.  Defendant Elizalde used his position of power and influence with the Sheriff's Office to intimidate, coerce, harass, assault, and sexually batter Plaintiff.

254.  When Defendant Elizalde, while in his Deputy uniform, acting as a Sheriff's Deputy with the Santa Barbara County Sheriff's Office, and wielding his government-issued firearm, intimidated, coerced, harassed, assaulted, and sexually battered Plaintiff, he violated Plaintiff's right to be secure in her person and free of interference with her bodily integrity as guaranteed by the Fourteenth Amendment.

COMPLAINT - 41

255.  When Defendant Elizalde, while in his Deputy uniform, acting as a Sheriff's Deputy with the Santa Barbara County Sheriff's Office, and wielding his government-issued firearm, intimidated, coerced, harassed, and sexually assaulted and battered Plaintiff, he violated her right to be secure in her person against unreasonable searches and seizures as guaranteed under the Fourth Amendment of the U.S. Constitution.

256.  Sexual assault, harassment, and sexual battery, by their very nature, involve conduct that is excessive and unreasonable and cannot be warranted or justified under any circumstances.

257.  As a direct and legal consequences of Defendant Elizalde's conduct, Plaintiff suffered personal injury and damages as a result of Defendant's conduct in an amount to be proven at trial.

**CLAIM V - VIOLATION OF CIVIL RIGHTS (BANE ACT, CAL. CIV. CODE § 52.1) (ALL DEFENDANTS)**

258.  Plaintiff hereby alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 219 above, inclusive.

COMPLAINT - 42

259.  Defendant Elizalde intentionally interfered with Plaintiff's civil rights by intimidation or coercion.

260.  Defendant Elizalde acted violently against Plaintiff to prevent her from exercising her right to be free from unlawful seizures and her substantive due process rights.

261.  Plaintiff was harmed.

262.  Defendant Elizalde's conduct was a substantial factor in causing Plaintiff's harm.

263.  Defendant County of Santa Barbara is vicariously liable for Defendant Elizalde's actions given that his "tortious conduct is broadly incidental to the enterprise of law enforcement." *See Mary M. v. City of Los Angeles*, 54 Cal.3d 202, 218 (1991).

264.  Plaintiff suffered personal injury and damages as a result of Defendants' conduct in an amount to be proven at trial.

**CLAIM VI - VIOLATION OF CIVIL RIGHTS (RALPH ACT - CAL. CIV. CODE § 51.7) (ALL DEFENDANTS)**

265.  Plaintiff hereby alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 219 above, inclusive.

COMPLAINT - 43

266.  Defendant Elizalde committed violent acts against Plaintiff.

267.  A substantial motivating reason for Defendant Elizalde's conduct was Plaintiff's sex.

268.  Plaintiff was harmed.

269.  Defendant Elizalde's conduct was a substantial factor in causing Plaintiff's harm.

270.  Defendant County of Santa Barbara is vicariously liable for Defendant Elizalde's actions given that his "tortious conduct is broadly incidental to the enterprise of law enforcement." *See Mary M. v. City of Los Angeles*, 54 Cal.3d 202, 218 (1991).

271.  Plaintiff suffered personal injury and damages as a result of Defendants' conduct in an amount to be proven at trial.

**CLAIM VII - VIOLATION OF CIVIL RIGHTS (UNRUH ACT - CAL. CIV. CODE § 51) (ALL DEFENDANTS)**

272.  Plaintiff hereby alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 219 above, inclusive.

273.  Defendant Elizalde denied full and equal privileges to Plaintiff.

COMPLAINT - 44

274.  A substantial motivating reason for Defendant Elizalde's conduct was his perception of Plaintiff's sex.

275.  Plaintiff was harmed.

276.  Defendant Elizalde's conduct was a substantial factor in causing Plaintiff's harm.

277.  Defendant County of Santa Barbara is vicariously liable for Defendant Elizalde's actions given that his "tortious conduct is broadly incidental to the enterprise of law enforcement." *See Mary M. v. City of Los Angeles*, 54 Cal.3d 202, 218 (1991).

278.  Plaintiff suffered personal injury and damages as a result of Defendants' conduct in an amount to be proven at trial.

### CLAIM VIII - VIOLATION OF CIVIL RIGHTS-GENDER VIOLENCE (CAL. CIV. CODE § 52.4(C)) (DEFENDANT ELIZALDE)

279.  Plaintiff hereby alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 219 above, inclusive.

280.  Defendant Elizalde created physical intrusions of a sexual nature on Plaintiff.

COMPLAINT - 45

281.  Defendant Elizalde's physical intrusions of a sexual nature were under coercive conditions.

282.  Plaintiff suffered personal injury and damages as a result of Defendant Elizalde's conduct in an amount to be proven at trial.

### CLAIM IX - VIOLATION OF CIVIL RIGHTS-SEXUAL HARASSMENT (CAL. CIV. CODE § 51.9) (DEFENDANT ELIZALDE)

283.  Plaintiff hereby alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 219 above, inclusive.

284.  Plaintiff sought the professional assistance of Defendant Elizalde as a Sheriff's Deputy.

285.  Defendant Elizalde made sexual advances, sexual solicitations, sexual requests, and/or demands for sexual compliance to Plaintiff.

286.  These sexual advances, sexual solicitations, sexual requests, and/or demands for sexual compliance were unwelcome and pervasive or severe.

287.  Defendant Elizalde engaged in physical conduct of a sexual nature based on gender.

COMPLAINT - 46

288.  This physical conduct of a sexual nature based on gender was unwelcome and also pervasive or severe.

289.  Plaintiff suffered personal injury and damages as a result of Defendant Elizalde's conduct in an amount to be proven at trial.

## CLAIM X – ASSAULT (ALL DEFENDANTS)

290.  Plaintiff hereby alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 219 above, inclusive.

291.  Defendant Elizalde acted, intending to cause offensive contact.

292.  Plaintiff reasonably believed that she was about to be touched in a harmful manner.

293.  Plaintiff did not consent to the offensive contact by Defendant Elizalde.

294.  Plaintiff was harmed.

295.  Defendant Elizalde's conduct was a substantial factor in causing Plaintiff's harm.

296.  Defendant County of Santa Barbara is vicariously liable for Defendant Elizalde's actions given that his "tortious conduct is

COMPLAINT - 47

broadly incidental to the enterprise of law enforcement." *See Mary M. v. City of Los Angeles*, 54 Cal.3d 202, 218 (1991).

297.  Plaintiff suffered personal injury and damages as a result of Defendants' conduct in an amount to be proven at trial.

### CLAIM XI – SEXUAL BATTERY (ALL DEFENDANTS)

298.  Plaintiff hereby alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 219 above, inclusive.

299.  Defendant Elizalde intended to cause an offensive contact with Plaintiff's sexual organ and breast and a sexually offensive contact with Plaintiff resulted.

300.  Defendant Elizalde intended to cause an offensive contact with Plaintiff by use of Defendant Elizalde's penis and a sexually offensive contact with Plaintiff resulted.

301.  Plaintiff did not consent to the touching.

302.  Plaintiff was offended by Defendant Elizalde's conduct.

303.  Defendant County of Santa Barbara is vicariously liable for Defendant Elizalde's actions given that his "tortious conduct is

COMPLAINT - 48

broadly incidental to the enterprise of law enforcement." *See Mary M. v. City of Los Angeles*, 54 Cal.3d 202, 218 (1991).

304.  Plaintiff suffered personal injury and damages as a result of Defendants' conduct in an amount to be proven at trial.

**CLAIM XII – FALSE IMPRISONMENT (ALL DEFENDANTS)**

305.  Plaintiff hereby alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 219 above, inclusive.

306.  Defendant Elizalde intentionally deprived Plaintiff of her freedom of movement by use of force.

307.  That wrongful restraint compelled Plaintiff to stay somewhere for some appreciable time, however short.

308.  Plaintiff did not consent.

309.  Plaintiff was actually harmed.

310.  Defendant Elizalde's conduct was a substantial factor in causing Plaintiff's harm.

311.  Defendant County of Santa Barbara is vicariously liable for Defendant Elizalde's actions given that his "tortious conduct is

COMPLAINT - 49

broadly incidental to the enterprise of law enforcement." *See Mary M. v. City of Los Angeles*, 54 Cal.3d 202, 218 (1991).

312. Plaintiff suffered personal injury and damages as a result of Defendants' conduct in an amount to be proven at trial.

## CLAIM XIII – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (ALL DEFENDANTS)

313. Plaintiff hereby alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 219 above, inclusive.

314. Defendant Elizalde's conduct in grooming and then sexually harassing, assaulting, and sexually battering Plaintiff was outrageous.

315. Defendant Elizalde intended to cause Plaintiff emotional distress.

316. Plaintiff suffered severe emotional distress from her interactions with Defendant Elizalde.

317. Defendant Elizalde's conduct was a substantial factor in causing Plaintiff's severe emotional distress.

318. Defendant County of Santa Barbara is vicariously liable for Defendant Elizalde's actions given that his "tortious conduct is

COMPLAINT - 50

broadly incidental to the enterprise of law enforcement." *See Mary M. v. City of Los Angeles*, 54 Cal.3d 202, 218 (1991).

319.  Plaintiff suffered personal injury and damages as a result of Defendants' conduct in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jane Doe prays that the Court enter judgment against Defendants, awarding her:

320.  Compensatory damages for emotional harm in an amount to be proven at trial;

321.  Special damages;

322.  Punitive damages against Defendant Elizalde, as allowed by law;

323.  Reasonable attorneys' fees, expert witness fees, and costs pursuant to, among other things, Cal. Civ. Code § 52; 42 U.S.C. § 1988;

324.  Pre- and post-judgment interest at the maximum rate allowed by law;

325.  Damages to make up for any adverse tax consequences for any award to Plaintiff Jane Doe; and

326.  Such other relief as this Court may deem appropriate.

Respectfully submitted,


DATED: May 24, 2024                /s/ Timothy A. Scott
                                   Timothy A. Scott
                                   MCKENZIE SCOTT PC
                                   *Attorneys for Jane Doe*
                                   Email:
                                   mmckenzie@mckenziescott.com
                                   tscott@mckenziescott.com
                                   njimenez@mckenziescott.com

COMPLAINT - 52