**TIMOTHY A. SCOTT** (SBN 215074)
tscott@mckenziescott.com
**MICHELE A. McKENZIE** (SBN 209657)
mmckenzie@mckenziescott.com
**NICOLAS O. JIMENEZ** (SBN 295057)
njimenez@mckenziescott.com
MCKENZIE SCOTT PC
1350 Columbia Street, Suite 600
San Diego, California 92101
Tel: (619) 794-0451
Fax: (619) 202-7461

*Attorneys for* Jane Doe

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE,<br><br>               Plaintiff,<br><br>vs.<br><br>COUNTY OF SANTA BARBARA, JOSHUA ELIZALDE, & JOHN DOES 1-10,<br><br>               Defendants. | Case No.: 2:24-cv-04334-MEMF (SKx)<br><br>Hon. Maame Ewusi-Mensah Frimpong<br>U.S. District Court Judge<br>Courtroom: 8B, 8th Floor<br>United States Courthouse, 350 West First Street, Los Angeles, CA, 90012<br><br>FIRST AMENDED COMPLAINT FOR DAMAGES FOR VIOLATIONS OF:<br>1. 42 U.S.C. § 1983 (against the County of Santa Barbara for Official Policy, Practice or Custom);<br>2. 42 U.S.C. § 1983 (against Elizalde); |

FIRST AMENDED COMPLAINT - 1

3. Bane Act, Cal. Civ. Code § 52.1 (against all Defendants);
4. Ralph Act, Cal. Civ. Code § 51.7 (against all Defendants);
5. Unruh Act, Cal. Civ. Code § 51 (against all Defendants);
6. Gender violence, Cal. Civ. Code § 52.4 (against Defendant Elizalde);
7. Sexual harassment, Cal. Civ. Code § 51.9 (against Defendant Elizalde);
8. Assault (against all Defendants);
9. Sexual battery (against all Defendants);
10. False imprisonment (against all Defendants); and
11. Intentional infliction of emotional distress (against all Defendants).

AND DEMAND FOR JURY TRIAL.

FIRST AMENDED COMPLAINT - 2

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................5

INTRODUCTION...........................................................................6

THE PARTIES .............................................................................7

JURISDICTION AND VENUE.............................................................8

BACKGROUND FACTS ...................................................................8

DEFENDANT ELIZALDE RESPONDS TO A CALL TO THE SHERIFF'S OFFICE FOR ASSISTANCE WITH TRESPASSERS .........9

GROOMING OF PLAINTIFF – GAINING TRUST THROUGH OFFERS OF PROTECTION...................................................................11

ENCOUNTER IN GOLETA – UNWANTED TOUCHING OF PLAINTIFF'S THIGH AND NECK.......................................................15

ENCOUNTER IN LOS OLIVOS – UNWANTED TOUCHING OF PLAINTIFF AND PROMISES TO PROTECT HER ............................17

ENCOUNTER IN BUELLTON – MAKING PLAINTIFF SIT ON HIS LAP AND TRYING TO KISS PLAINTIFF..................................18

ENCOUNTER IN SOLVANG – TRYING TO KISS PLAINTIFF AND TRYING TO GET PLAINTIFF TO ORALLY COPULATE HIM IN HIS PATROL VEHICLE ..............................................................20

ENCOUNTER IN SANTA YNEZ – TRYING TO KISS PLAINTIFF, GRABBING HER BREAST AND GENITALS, AND TRYING TO GET PLAINTIFF TO MASTURBATE HIM IN HIS PATROL VEHICLE.....22

ENCOUNTER AT PLAINTIFF'S RESIDENCE – ASSAULT, FALSE IMPRISONMENT, AND SEXUAL BATTERY.................................24

DISCLOSURE TO SANTA BARBARA COUNTY DISTRICT ATTORNEY'S OFFICE AND THE SHERIFF'S OFFICE...................27

FIRST AMENDED COMPLAINT - 3

SANTA BARBARA COUNTY SHERIFF'S OFFICE DESCRIBES REPORTING OF ASSAULTS AND SEXUAL BATTERIES BY ON-DUTY SHERIFF'S DEPUTY AS ACCOMPLISHING NOTHING OTHER THAN GIVING THE DEPUTY A "PAID VACATION" ......................... 34

CLAIM I – 42 U.S.C. § 1983 (Defendant County for official policy, practice or custom) ................................................................................. 39

CLAIM II – 42 U.S.C. § 1983 (Defendant Elizalde) .............................. 42

CLAIM III - Violation of civil rights (Bane Act, Cal. Civ. Code § 52.1) (All defendants) ...................................................................................... 43

CLAIM IV - Violation of civil rights (Ralph Act - Cal. Civ. Code § 51.7) (All defendants) ...................................................................................... 44

CLAIM V - Violation of civil rights (Unruh Act - Cal. Civ. Code § 51) (All defendants) ...................................................................................... 45

CLAIM VI - Violation of civil rights-gender violence (Cal. Civ. Code § 52.4(c)) (Defendant Elizalde) ............................................................. 46

CLAIM VII - Violation of civil rights-sexual harassment (Cal. Civ. Code § 51.9) (Defendant Elizalde) ................................................................. 47

CLAIM VIII – ASSAULT (All defendants) ............................................ 48

CLAIM IX – SEXUAL BATTERY (All defendants) ............................... 49

CLAIM X – FALSE IMPRISONMENT (All defendants) ....................... 50

CLAIM XI – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (All defendants) ................................................................. 51

PRAYER FOR RELIEF ......................................................................... 52

FIRST AMENDED COMPLAINT - 4

# TABLE OF AUTHORITIES

**Cases**

*Mary M. v. City of Los Angeles*, 54 Cal.3d 202 (1991) .................... passim

**Statutes**

28 U.S.C. § 1331 .......................................................................................8

28 U.S.C. § 1343(a)(3) & (4) ....................................................................8

28 U.S.C. § 1391 .......................................................................................8

42 U.S.C. § 1983 ............................................................................. 6, 39, 42

42 U.S.C. § 1988 .....................................................................................52

Cal. Civ. Code § 51 .............................................................................. 6, 45

Cal. Civ. Code § 51.7 ........................................................................... 6, 44

Cal. Civ. Code § 51.9 ................................................................................6

Cal. Civ. Code § 52 .................................................................................52

Cal. Civ. Code § 52.1 ........................................................................... 6, 43

Cal. Civ. Code § 52.4 ........................................................................... 6, 46

California Gov't Code § 900.4, et seq. .....................................................8

**Other Authorities**

Santa Barbara County Sheriff's Office Policy 1065.2(d) .................. 36, 37

Santa Barbara County Sheriff's Office Policy 336.2 ...........................32

Santa Barbara County Sheriff's Office Policy 602.2 ...........................33

Santa Barbara County Sheriff's Office Policy 602.7.1..................... 31, 32

FIRST AMENDED COMPLAINT - 5

## INTRODUCTION

1. This lawsuit concerns violations of 42 U.S.C. § 1983 and violations of Cal. Civ. Code §§ 51, 51.7, 52.1, 52.4, and 51.9 as well as additional state causes of action, including: assault, sexual battery, false imprisonment, and intentional infliction of emotional distress.

2. Plaintiff Jane Doe was the victim of repeated sexual harassment, assaults, and sexual batteries by an on-duty Santa Barbara County Sheriff's Deputy from January through February 2023.

3. The Sheriff's Deputy used his knowledge of Plaintiff as a survivor of domestic violence with an active protection order against her ex-partner to manipulate Plaintiff into permitting repeated contact with him under the guise of "protecting" Plaintiff from further violence.

4. Instead of "protecting" her, the Sheriff's Deputy repeatedly sexually harassed, abused, and battered Plaintiff while on duty with the Santa Barbara County Sheriff's Office.

5. Following a purported internal investigation, Defendant County's Santa Barbara County Sheriff's Office informed Plaintiff that the only thing she accomplished by reporting the sexual harassment,

FIRST AMENDED COMPLAINT - 6

assaults, and sexual batteries was giving the Sheriff's Deputy a "paid vacation."

6. This lawsuit follows.

## THE PARTIES

7. Plaintiff Jane Doe is an individual who resides in Santa Barbara County within the Central District of California.

8. Defendant County of Santa Barbara is a public entity within the Central District of California charged with supervising the official conduct of the Santa Barbara County Sheriff.

9. Defendant Joshua Elizalde is an individual who, on information and belief, resides in Santa Barbara County in the Central District of California and, at all times relevant to this complaint, was employed as a Sheriff's Deputy with the Santa Barbara County Sheriff's Office.

10. Defendant John Does 1-10 are supervisors within the Santa Barbara County Sheriff's Office responsible for training and supervising Sheriff Deputies.

FIRST AMENDED COMPLAINT - 7

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) & (4) and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

12.     Venue is appropriate in this Court because all of the acts alleged herein occurred in Santa Barbara County within the Central District of California. *See* 28 U.S.C. § 1391.

13.     Prior to filing this complaint, Plaintiff also timely filed a claim for damages pursuant to California Gov't Code § 900.4, et seq. with the County of Santa Barbara.

14.     This complaint is timely filed.

## BACKGROUND FACTS

15.     Plaintiff is a survivor of domestic violence who sought—and received—assistance from the Santa Barbara County Sheriff's Office from 2021 through 2022.

16.     In 2021 and again in 2022, Plaintiff sought—and received—restraining orders against her ex-boyfriend.

17.     At the time of the incidents described herein, there was an active restraining order against Plaintiff's ex-boyfriend.

FIRST AMENDED COMPLAINT - 8

18.    In all of his interactions with Plaintiff, Defendant Elizalde was on-duty and in uniform.

**DEFENDANT ELIZALDE RESPONDS TO A CALL TO THE SHERIFF'S OFFICE FOR ASSISTANCE WITH TRESPASSERS**

19.    On December 30, 2022, Plaintiff contacted the Santa Barbara County Sheriff's Office to report that unknown individuals were seen on Plaintiff's home security footage trespassing at Plaintiff's residence.

20.    Plaintiff was not home at the time but had seen the trespassers remotely via the residence's security system.

21.    Sheriff's Deputy Defendant Joshua Elizalde, who was on uniformed patrol, was dispatched to investigate the reported trespassing at Plaintiff's residence.

22.    Plaintiff returned to her residence to complete the incident report of the trespassing with Defendant Elizalde.

23.    When Plaintiff returned to her residence, Defendant Elizalde was already inside the perimeter gate of the property, waiting for Plaintiff at her residence.

FIRST AMENDED COMPLAINT - 9

24. Plaintiff explained to Defendant Elizalde that she is hypervigilant about her security because of several instances of domestic violence with her ex-boyfriend and ongoing protection orders.

25. Plaintiff told Defendant Elizalde that she is deathly afraid of her ex-boyfriend against whom she has a restraining order.

26. Defendant Elizalde asked Plaintiff to send him copies of the home security footage for the trespassing incident report.

27. Defendant Elizalde gave Plaintiff his business card.

28. At the time, Plaintiff was in a dispute with her landlord, and the unknown individuals had been dispatched to the residence—unbeknownst to Plaintiff—by her landlord.

29. Plaintiff sent Defendant Elizalde the requested video footage for his incident report.

30. On January 20, 2023, Plaintiff requested Defendant Elizalde provide her with a copy of the trespassing incident report that she could forward to her attorney in the landlord-tenant dispute.

31. Defendant Elizalde asked Plaintiff to call him to discuss.

32. During phone calls during this period in January 2023, Defendant Elizalde asked Plaintiff whether she had a boyfriend.

FIRST AMENDED COMPLAINT - 10

33.     Plaintiff explained that she did not have a boyfriend and asked why Defendant Elizalde was asking that question.

34.     Defendant Elizalde claimed that he was asking to figure out if that was a reason why Plaintiff's landlord might be sending people to inspect the residence.

## GROOMING OF PLAINTIFF – GAINING TRUST THROUGH OFFERS OF PROTECTION

35.     Over the following weeks in January and February 2023, while Defendant Elizalde was preparing the trespassing incident report, he began speaking regularly with Plaintiff on the phone and via text message.

36.     Defendant Elizalde presented himself to Plaintiff as a "friend" and would chat and flirt with Plaintiff on the phone and text with her.

37.     Defendant Elizalde informed Plaintiff that he was a "good listener" and if there was anything she wanted "to vent or talk about" to let him know.

38.     Defendant Elizalde contacted Plaintiff from multiple phone numbers.

39.     Plaintiff confided in Defendant Elizalde that she was terrified of her ex-boyfriend, against whom she had an active restraining order.

FIRST AMENDED COMPLAINT - 11

40. Defendant Elizalde offered to Plaintiff that he could patrol around her residence while on duty to try and keep an eye on her safety.

41. Defendant Elizalde used his position as a Sheriff's Deputy to gain Plaintiff's trust and, subsequently, to sexually harass, assault, and batter her.

42. Defendant County and Defendant John Does 1-10 failed to create policies governing appropriate interactions of Sheriff Deputies including Defendant Elizalde with domestic violence victims.

43. Defendant County and Defendant John Does 1-10 failed to properly train Defendant Elizalde on the special vulnerability of domestic violence victims.

44. Defendant County and Defendant John Does 1-10 failed to properly supervise Defendant Elizalde's encounters with domestic violence victims, including Plaintiff.

45. During their frequent telephone calls, Plaintiff would ask Defendant Elizalde repeatedly for the trespassing incident report so she could provide it to her attorney in the landlord-tenant dispute.

46. Plaintiff would also text Defendant Elizalde and ask him for the incident report.

FIRST AMENDED COMPLAINT - 12

47.   Defendant Elizalde asked Plaintiff if her ex-boyfriend was bothering her, informing her that he could see him on his computer system, and that the ex-boyfriend was roaming in her area.

48.   Defendant Elizalde would also regularly meet up with Plaintiff at her residence.

49.   Defendant Elizalde would regularly call Plaintiff and inform her that he was patrolling in her area and that he could be at her home very quickly.

50.   Defendant Elizalde asked Plaintiff not to tell anyone that he had been visiting her residence because, he explained, he wouldn't be able to patrol her area anymore if people thought he was taking time away from other cases by protecting her.

51.   Defendant Elizalde presented his visits to Plaintiff as favors that helped in keeping her physically safe from her ex-boyfriend.

52.   Defendant County and Defendant John Does 1-10 failed to properly supervise Defendant Elizalde during this period and failed to stop his nascent improper grooming of Plaintiff.

FIRST AMENDED COMPLAINT - 13

53. Defendant Elizalde fraudulently abused his authority as a Sheriff's Deputy by repeatedly telling Plaintiff he would keep her safe from her ex-boyfriend if she did what he asked.

54. Before visiting her residence, Defendant Elizalde would often ask Plaintiff if her home security system was recording and request that she turn off the cameras before he arrived.

55. On information and belief, Defendant Elizalde had the gate code to Plaintiff's residence from his initial visit to investigate the reported trespassing and continued to use it to gain access Plaintiff's rented property.

56. At one point while visiting Plaintiff at her home, Defendant Elizalde showed Plaintiff his government-issued gear, including his handcuffs.

57. Defendant Elizalde said he would "show" Plaintiff how the handcuffs worked.

58. Defendant Elizalde placed the handcuffs on Plaintiff's wrists.

59. Plaintiff did not like being in handcuffs and wanted them removed.

FIRST AMENDED COMPLAINT - 14

60.   Plaintiff had to expressly request Defendant Elizalde remove them from her wrists.

61.   Defendant Elizalde giggled in response.

62.   Defendant Elizalde then removed the handcuffs, appearing to enjoy Plaintiff's fear of having on the handcuffs.

63.   Throughout January and February 2023, Defendant Elizalde engaged in a fraudulent campaign of manipulation leading Plaintiff to believe that she needed to continue to agree to see him to be protected by the Santa Barbara County Sheriff's Office.

64.   But Defendant Elizalde's manipulation instead turned into sexual harassment, assault, sexual battery, false imprisonment, and gender violence against Plaintiff.

**ENCOUNTER IN GOLETA – UNWANTED TOUCHING OF PLAINTIFF'S THIGH AND NECK**

65.   In late January 2023, Defendant Elizalde contacted Plaintiff to go over the trespassing incident report at a satellite Sheriff's office in Goleta, California.

66.   Plaintiff met Defendant Elizalde there.

67.   Defendant Elizalde placed Plaintiff in a private room and had her sit down.

FIRST AMENDED COMPLAINT - 15

68. Defendant Elizalde yanked the chair Plaintiff was sitting on, jerking her towards him.

69. Plaintiff was frightened by Defendant Elizalde's actions.

70. Defendant Elizalde explained that he just really liked Plaintiff.

71. Plaintiff was scared and asked to go outside for a walk, which Defendant Elizalde permitted.

72. But Defendant Elizalde eventually coaxed Plaintiff back into the office.

73. Once back in the office, Defendant Elizalde started rubbing Plaintiff's thigh with his hand.

74. Defendant Elizalde also put his hand on Plaintiff's neck by her jaw.

75. Defendant Elizalde then slid his hand around to the side of Plaintiff's neck, caressing her and moving her hair.

76. Defendant Elizalde's physical contact was unwanted and unwelcome.

77. Plaintiff made an excuse to leave the office and return home.

FIRST AMENDED COMPLAINT - 16

78. On information and belief, Defendant County failed to have policies in place governing appropriate behavior during encounters with members of the public while at a Sheriff-operated property.

79. Defendant County and Defendant John Does 1-10 failed to properly supervise Defendant Elizalde's encounters with members of the public while at a Sheriff-operated property.

**ENCOUNTER IN LOS OLIVOS – UNWANTED TOUCHING OF PLAINTIFF AND PROMISES TO PROTECT HER**

80. Defendant Elizalde asked Plaintiff to meet him in late January 2023 in the city of Los Olivos.

81. When Plaintiff arrived, Defendant Elizalde instructed Plaintiff to get into his patrol vehicle.

82. Once inside his patrol vehicle, Defendant Elizalde showed Plaintiff his service computer and rifle.

83. Defendant Elizalde showed Plaintiff how he could see other deputies on his computer, where they are and when they approached his location.

84. Defendant Elizalde then started staring intensely at Plaintiff and began holding her shoulder and, eventually, the back of her neck.

FIRST AMENDED COMPLAINT - 17

85. Defendant Elizalde's physical contact was unwanted and unwelcome.

86. Defendant Elizalde told Plaintiff that he cared about her and that he would protect her.

**ENCOUNTER IN BUELLTON – MAKING PLAINTIFF SIT ON HIS LAP AND TRYING TO KISS PLAINTIFF**

87. At the start of February 2023, Defendant Elizalde called Plaintiff and asked her to meet him at the Buellton Sheriff's Office to review the trespassing incident report.

88. At the Sheriff's Office, Defendant Elizalde asked Plaintiff if her ex-boyfriend had called her.

89. Defendant Elizalde informed Plaintiff that he would be there to protect her if anything were to happen.

90. Inside the office, Defendant Elizalde removed his body camera, and informed Plaintiff that he had to write a warrant.

91. Defendant Elizalde directed Plaintiff to sit down.

92. Defendant Elizalde moved his chair close to Plaintiff's chair and put his arms around her.

93. Defendant Elizalde then moved Plaintiff from her chair and had her sit on his lap.

FIRST AMENDED COMPLAINT - 18

94. While on his lap, Defendant Elizalde started to rub her thighs.

95. Defendant Elizalde acted with malice and oppression as he pushed Plaintiff's hair out of her face and tried to kiss her while holding her on his lap.

96. Plaintiff could feel Defendant Elizalde's erect penis through his uniform pants.

97. Plaintiff removed herself from his lap and returned to her chair.

98. Defendant Elizalde's physical contact was unwanted, unwelcome, and offensive.

99. Defendant Elizalde informed Plaintiff that he would do anything she wanted.

100. Defendant Elizalde indicated he wanted to show Plaintiff an adjacent private room.

101. Plaintiff said "no."

102. Defendant Elizalde informed Plaintiff that he would be her "slave boy."

103. Plaintiff started crying, told Defendant Elizalde she wanted to go home, and left the office.

FIRST AMENDED COMPLAINT - 19

104.  Defendant Elizalde later called Plaintiff and apologized for his behavior and promised it would not happen again.

105.  On information and belief, Defendant County failed to have policies in place governing appropriate behavior during encounters with members of the public while at a Sheriff-operated property.

106.  Defendant County and Defendant John Does 1-10 failed to properly supervise Defendant Elizalde's encounters with members of the public while at a Sheriff-operated property.

**ENCOUNTER IN SOLVANG – TRYING TO KISS PLAINTIFF AND TRYING TO GET PLAINTIFF TO ORALLY COPULATE HIM IN HIS PATROL VEHICLE**

107.  Defendant Elizalde again called Plaintiff in February 2023 and asked her to meet him at a park in Solvang because he needed additional information for the trespassing incident report.

108.  Defendant Elizalde was in uniform and on duty.

109.  Defendant Elizalde asked Plaintiff to sit in his patrol car with him.

110.  Defendant Elizalde told Plaintiff that he cared about her and thought she was pretty.

FIRST AMENDED COMPLAINT - 20

111.  Defendant Elizalde pulled Plaintiff towards him by gripping the back of her head.

112.  Defendant Elizalde tried to kiss Plaintiff.

113.  Plaintiff pulled away.

114.  Defendant Elizalde acted with malice and oppression as he placed Plaintiff's hand on his genital-area multiple times.

115.  Plaintiff pulled away multiple times.

116.  Defendant Elizalde held Plaintiff's hand and she started to cry and told him "no."

117.  Defendant Elizalde grabbed Plaintiff and tried to kiss her again.

118.  Plaintiff told him "no."

119.  Defendant Elizalde placed Plaintiff's hand on the back of his head and told her to rub his head.

120.  Plaintiff was crying during this encounter and informed Defendant Elizalde that she wanted to go home.

121.  Defendant Elizalde continued to try to get Plaintiff to kiss him.

122.  Defendant Elizalde acted with malice and oppression as he continued to try to place Plaintiff's hands on his genital-area.

FIRST AMENDED COMPLAINT - 21

123.  Defendant Elizalde removed his erect penis from his uniform pants.

124.  Defendant Elizalde acted with malice and oppression as he grabbed Plaintiff's head to move her towards his genital-area in an attempt to get her to orally copulate him.

125.  Plaintiff moved away from Defendant Elizalde.

126.  Defendant Elizalde's physical contact was unwanted, unwelcome, and offensive.

127.  Plaintiff left to go home, crying in her car and at home.

128.  Defendant Elizalde called Plaintiff and apologized.

**ENCOUNTER IN SANTA YNEZ – TRYING TO KISS PLAINTIFF, GRABBING HER BREAST AND GENITALS, AND TRYING TO GET PLAINTIFF TO MASTURBATE HIM IN HIS PATROL VEHICLE**

129.  Defendant Elizalde asked Plaintiff to meet him in Santa Ynez in early February 2023.

130.  Defendant Elizalde asked Plaintiff to sit with him in his patrol vehicle.

131.  Defendant Elizalde showed Plaintiff how he could use his patrol vehicle computer to search for her restraining order.

132.  Plaintiff confided that she was feeling scared of her ex-boyfriend.

FIRST AMENDED COMPLAINT - 22

133.  Defendant Elizalde fraudulently promised he would protect her and arrest her ex-boyfriend if he violated the protection order.

134.  Defendant Elizalde asked Plaintiff if she wanted him to go arrest her ex-boyfriend that evening even though there was no violation of the protection order.

135.  Plaintiff started to cry and Defendant Elizalde promised Plaintiff that unlike "city police" he would do something to protect her if the protection order were violated.

136.  Defendant Elizalde grabbed Plaintiff's hand.

137.  Defendant Elizalde forced Plaintiff to kiss him.

138.  Defendant Elizalde fraudulently told Plaintiff that she had to listen to him in order to stay safe.

139.  Defendant Elizalde acted with malice and oppression as he unzipped his uniform pants and pulled out his penis.

140.  Defendant Elizalde acted with malice and oppression when he grabbed Plaintiff's hand repeatedly and tried to get Plaintiff to masturbate him by placing his hand over Plaintiff's hand on top of his erect penis.

FIRST AMENDED COMPLAINT - 23

141.   Plaintiff pulled away but Defendant Elizalde roughly grabbed her hand back.

142.   Plaintiff was afraid of Defendant Elizalde.

143.   Defendant Elizalde acted with malice and oppression when he put his hands under Plaintiff's shirt and started to squeeze her breasts.

144.   Defendant Elizalde grabbed her genital area over her clothes.

145.   Defendant Elizalde's physical contact was unwanted, unwelcome, and offensive.

146.   Plaintiff started crying very hard.

147.   Defendant Elizalde eventually stopped grabbing Plaintiff.

148.   Defendant Elizalde then offered to hold Plaintiff and take care of her.

149.   Plaintiff eventually left Defendant Elizalde to return home.

**ENCOUNTER AT PLAINTIFF'S RESIDENCE – ASSAULT, FALSE IMPRISONMENT, AND SEXUAL BATTERY**

150.   In February 2023, Defendant Elizalde asked to see Plaintiff at her residence.

151.   Defendant Elizalde told Plaintiff that he really cared for her.

152.   Defendant Elizalde informed Plaintiff that she needed to listen to him if she wanted him to protect her.

FIRST AMENDED COMPLAINT - 24

153. Defendant Elizalde asked Plaintiff to go upstairs because he was worried someone might see him through the windows of her home.

154. Defendant Elizalde laid down against the headboard on Plaintiff's bed and instructed her to lay next to him.

155. Defendant Elizalde got up to take off his body camera and vest but left his belt on.

156. Defendant Elizalde returned to the bed still wearing his service weapon.

157. Plaintiff was very scared.

158. Defendant Elizalde tried to hold and kiss Plaintiff.

159. Plaintiff turned away from Defendant Elizalde.

160. Defendant Elizalde acted with malice and oppression when he removed his penis from his uniform pants and tried to get Plaintiff to masturbate him with her hand.

161. Defendant Elizalde then tried to get Plaintiff to orally copulate him.

162. Plaintiff resisted and tried to move away from him.

163. At some point, Defendant Elizalde removed his belt with his service weapon.

FIRST AMENDED COMPLAINT - 25

164.  Defendant Elizalde put his fingers in Plaintiff's vagina.

165.  Plaintiff told him to stop.

166.  Plaintiff was very scared.

167.  Defendant Elizalde got on top of Plaintiff.

168.  Defendant Elizalde tried to penetrate Plaintiff with his penis.

169.  Plaintiff was crying.

170.  Defendant Elizalde acted with malice and oppression when he held Plaintiff down and used his weight to hold her in place.

171.  Defendant Elizalde kept trying to penetrate Plaintiff with his penis.

172.  Plaintiff kept moving to evade Defendant Elizalde and prevent him from penetrating her vagina with his penis.

173.  Defendant Elizalde's physical contact was unwanted, unwelcome, and offensive.

174.  Defendant Elizalde eventually stopped when Plaintiff started crying uncontrollably.

175.  Defendant Elizalde appeared angry and frustrated.

176.  Several days after this, Defendant Elizalde asked to see Plaintiff again.

FIRST AMENDED COMPLAINT - 26

177. Defendant Elizalde apologized and said he would be patient with Plaintiff.

178. Defendant Elizalde brought Plaintiff food and a Valentine's Day card.

179. In the Valentine's Day card, Defendant Elizalde told Plaintiff that although he had not known her "long" he was "really grateful to have met [her] and spend time with [her]" and that she was an "amazing person" who Defendant Elizalde "really care[d] for."

180. In person that evening, Defendant Elizalde told Plaintiff that he cared for her.

181. Defendant Elizalde sat with Plaintiff on her couch and tried to kiss and hold her.

182. Plaintiff did not want this physical contact and started crying.

**DISCLOSURE TO SANTA BARBARA COUNTY DISTRICT ATTORNEY'S OFFICE AND THE SHERIFF'S OFFICE**

183. On or about March 3, 2023, Plaintiff spoke with Santa Barbara County District Attorney's Office Victim Witness Assistance Program Director, Megan Riker-Rheinschild.

184. According to Ms. Riker-Rheinschild, Plaintiff was crying during the entire conversation.

FIRST AMENDED COMPLAINT - 27

185. According to Ms. Riker-Rheinschild, Plaintiff told her about nonconsensual sexual contact with a Santa Barbara County Sheriff's Deputy.

186. According to Ms. Riker-Rheinschild, Plaintiff explained that "she would start to cry on the occasions she did not want [Defendant Elizalde] to touch her."

187. According to Ms. Riker-Rheinschild, Plaintiff explained that "he would not stop and only continued to penetrate her vagina digitally."

188. Santa Barbara County District Attorney's Office Victim Witness Assistance Program Director failed to file a report with law enforcement of these allegations of sexual assaults and batteries against a Santa Barbara County Sheriff's Deputy.

189. On information and belief, Santa Barbara County District Attorney's Office Victim Witness Assistance Program Director did not report these allegations of sexual assaults and batteries against a Santa Barbara County Sheriff's Deputy to law enforcement because there is a code or culture of silence within the Defendant Santa Barbara County law enforcement community aimed at protecting

FIRST AMENDED COMPLAINT - 28

their own from investigation and shielding their own from the consequences for acts of wrongdoing.

190.  On or about March 7, 2023, one of the detectives with the Santa Barbara County Sheriff's Office who had been assisting Plaintiff with her domestic violence case spoke with her on the phone.

191.  The detective asked to meet with Plaintiff to recover her ex-boyfriend's cell phone at a Sheriff substation.

192.  Plaintiff explained to the detective that she did not feel comfortable meeting with him at that Sheriff substation.

193.  The detective asked Plaintiff why she didn't want to meet with him there.

194.  In response to the detective's questioning, Plaintiff explained what happened with Defendant Elizalde.

195.  The detective reported Plaintiff's experiences with Defendant Elizalde to the Santa Barbara County Sheriff's Office.

196.  This same detective revealed to Plaintiff that Defendant Elizalde had also asked the detective about Plaintiff.

FIRST AMENDED COMPLAINT - 29

197. Representatives of the Santa Barbara County Sheriff's Office contacted Plaintiff and asked her to meet with them to discuss what happened.

198. One representative of the Santa Barbara County Sheriff's Office, Det. Joaquin Oliver, in requesting an in-person interview about what had happened, made comments to Plaintiff such as that he had "a wife," was "happily married" and "wouldn't try anything" with Plaintiff.

199. These comments did not put Plaintiff's mind at ease but instead struck her as odd and made her uncomfortable.

200. The representatives of the Santa Barbara County Sheriff's Office, including Det. Joaquin Oliver, did not inform Plaintiff of her right to have a confidential victim advocate or other support person with her during the interview.

201. Pursuant to the request of the Santa Barbara County Sheriff's Office's request, Plaintiff submitted to an in-person interview.

202. Plaintiff allowed the interview to be recorded at the Sheriff's Office request.

203. Plaintiff was apprehensive about this interview.

FIRST AMENDED COMPLAINT - 30

204.  Plaintiff did not know who she could trust within Santa Barbara County Sheriff's Office.

205.  Det. Joaquin Oliver described Plaintiff as "hesitant," "uncomfortable," and "very scared" about being interviewed about what Defendant Elizalde did to her.

206.  But nevertheless, the representatives of the Santa Barbara County Sheriff's Office, including Det. Joaquin Oliver, did not "[p]rior to the commencement of the initial interview, advise the victim in writing of the right to have a victim advocate and a support person of the victim's choosing present at any interview or contact by law enforcement" as required by Santa Barbara County Sheriff's Office Policy 602.7.1 whenever there is an allegation of sexual assault.

207.  The representatives of the Santa Barbara County Sheriff's Office, including Det. Joaquin Oliver, did not "[p]rior to the commencement of the initial interview, advise the victim in writing . . . about any other rights of a sexual assault victim pursuant to the sexual assault victim card described in Penal Code § 680.2" as required by Santa Barbara County Sheriff's Office Policy 602.7.1 whenever there is an allegation of sexual assault.

FIRST AMENDED COMPLAINT - 31

208.  The representatives of the Santa Barbara County Sheriff's Office, including Det. Joaquin Oliver, did not "[p]rior to the commencement of the initial interview, advise the victim in writing of . . . the right to have a person of the same or opposite gender present in the room during any interview with a law enforcement official unless no such person is reasonably available (Penal Code § 679.04)." as required by Santa Barbara County Sheriff's Office Policy 602.7.1 whenever there is an allegation of sexual assault.

209.  On information and belief, the criminal investigation into this sexual assault investigation was treated differently because it involved an active Sheriff Deputy which is indicative of the pervasive code or culture of silence within the Santa Barbara County Sheriff's Office aimed at protecting their own from investigation and shielding their own from the consequences for acts of wrongdoing.

210.  The representatives of the Santa Barbara County Sheriff's Office, including Det. Joaquin Oliver, did not "show compassion and understanding" for Plaintiff nor "make reasonable efforts to provide the support and information identified" as required by Santa Barbara County Sheriff's Office Policy 336.2.

FIRST AMENDED COMPLAINT - 32

211. Santa Barbara County Sheriff's Office representatives asked Plaintiff if she was wearing a wire to their meeting.

212. Santa Barbara County Sheriff's Office representatives asked Plaintiff if she had told anyone that she was going to an interview with them.

213. The nature and tone of the encounter with Santa Barbara County Sheriff's Office representatives made Plaintiff feel intimidated.

214. Even though Santa Barbara County Sheriff's Office Policy 602.2 dictates that detectives "responding to reports of sexual assaults, will strive to minimize the trauma experienced by the victims," the manner of the investigation and the failure to follow their own policies aimed at protecting crime victims exacerbated Plaintiff's trauma.

215. The Santa Barbara County Sheriff's Office representatives asked Plaintiff to allow them to download her phone.

216. Plaintiff was not advised that she could decline their request.

217. The Santa Barbara County Sheriff's Office representatives followed Plaintiff to her car to take possession of and then download her phone.

FIRST AMENDED COMPLAINT - 33

**SANTA BARBARA COUNTY SHERIFF'S OFFICE DESCRIBES REPORTING OF ASSAULTS AND SEXUAL BATTERIES BY ON-DUTY SHERIFF'S DEPUTY AS ACCOMPLISHING NOTHING OTHER THAN GIVING THE DEPUTY A "PAID VACATION"**

218. Plaintiff was later informed by the Santa Barbara County Sheriff's Office that Deputy Elizalde would not be prosecuted for his actions.

219. The Santa Barbara County Sheriff's Office informed Plaintiff that the only thing she achieved by reporting Defendant Elizalde's behavior to them was getting him a "paid vacation."

220. On information and belief, the Santa Barbara County Sheriff's Office detective's knowledge that Defendant Elizalde was asking about Plaintiff (the current victim in a domestic violence dispute) together with the Santa Barbara County Sheriff's Office's expressed opinion that the reporting of on-duty sexual harassment, assault, false imprisonment, and sexual battery resulted only in providing Defendant Elizalde with a "paid vacation," are indicative of a code or culture of silence within the Defendant County's Sheriff's Office used to protect each other from investigation and consequences for acts of wrongdoing.

FIRST AMENDED COMPLAINT - 34

221. On information and belief, the Santa Barbara County Sheriff's Office chose to place Defendant Elizalde on paid administrative leave instead of unpaid administrative leave for an employee "accused of committing a serious felony" as contemplated by the Santa Barbara County Sheriff's Office Administrative Investigation Manual because of the code or culture of silence within the Defendant County's Sheriff's Office directed towards protecting their own from investigation and shielding their own from the consequences for acts of wrongdoing.

222. On information and belief, the Defendant County's Santa Barbara County Sheriff's Office does not have a policy expressly prohibiting the targeting of crime victims and/or members of the public for sexual harassment and abuse.

223. On information and belief, Defendant County and Defendant John Does 1-10 do not train Sheriff Deputies to refrain from targeting crime victims and/or members of the public for sexual harassment and abuse.

224. On information and belief, Defendant County and Defendant John Does 1-10 do not properly supervise Sheriff Deputies' interactions

FIRST AMENDED COMPLAINT - 35

with crime victims and/or members of the public to ensure they are free from sexual harassment and abuse.

225. Throughout January and February 2023, Defendant Elizalde repeatedly manipulated his Computer Aided Dispatch device to prevent it from tracking his location when he met with Plaintiff.

226. Throughout January and February 2023, Defendant County failed to properly supervise Defendant Elizalde, in that Defendant County ignored the warnings signs that Defendant Elizalde was meeting with this victim alone repeatedly, manipulating his Computer Aided Dispatch device suspiciously, and never took action to intercede.

227. Defendant County's Sheriff's Office Policy 1065.2(d) requires deputies to "refrain from developing or maintaining personal . . . relationships with victims, witnesses or other individuals during the course of or as a direct result of any official contact."

228. But, on information and belief, Defendant County's Sheriff's Office does not have any practices in place to ensure that Policy 1065.2(d) is not violated.

FIRST AMENDED COMPLAINT - 36

229.   On information and belief, Defendant County and Defendant John Does 1-10 do not train Sheriff Deputies on how to avoid violating Policy 1065.2(d).

230.   Even though Defendant County's Sheriff's Office has a policy that allegations of serious misconduct, such as those found in this case, should result in Plaintiff being requested to submit a "citizen complaint form" for investigation and transmission to the Professional Standards Unit, on information and belief no such form was ever completed here, again indicative of a code or culture of silence aimed at protecting their own from investigation and consequences for acts of wrongdoing.

231.   Only after Plaintiff bravely persisted in reporting Defendant Elizalde's misconduct that he was quietly terminated from the Santa Barbara County Sheriff's Office.

232.   The County did not make a public example of Defendant Elizalde by condemning his behavior openly within the Department, however, nor use his misconduct as a training opportunity.  He was quietly terminated instead.

FIRST AMENDED COMPLAINT - 37

233. Despite all of the foregoing, Defendant County continues to use images of Defendant Elizalde in their paid promotional materials, including, at a minimum, recruitment videos for the Santa Barbara County Sheriff's Office accessible to the general public.

234. This continued promotion of Defendant Elizalde, despite the actual knowledge of his misconduct with Plaintiff, is an indication of a code or culture of silence within the Santa Barbara County Sheriff's Office designed to protect Sheriff Deputies from consequences for acts of wrongdoing, and a continued affront to victims like Plaintiff.

235. This continued promotion of Defendant Elizalde, despite the actual knowledge of his misconduct with Plaintiff, is also an indication to third parties of the Santa Barbara County Sheriff's Office's ratification of his illegal behavior.

236. As a result of the foregoing conduct of Defendant Elizalde as well as the failure of Defendant County and Defendant John Does 1-10 to act to prevent or mitigate, train against, properly supervise, enact policies prohibiting, and ultimately ratifying the sexual harassment, assaults, and sexual batteries, Plaintiff suffered and continues to

FIRST AMENDED COMPLAINT - 38

suffer humiliation, severe emotional distress, anxiety, suicidal ideation, post-traumatic stress disorder, sleep disturbance, feelings of hopelessness, depression, and other severe impacts on her physical and mental wellbeing.

## CLAIM I – 42 U.S.C. § 1983 (DEFENDANT COUNTY FOR OFFICIAL POLICY, PRACTICE OR CUSTOM)

237.  Plaintiff hereby alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 236 above, inclusive.

238.  Defendant Elizalde's sexual harassment, gender violence, false imprisonment, sexual assaults and batteries occurred while he was on duty and in uniform as a peace officer with the Santa Barbara County Sheriff's Office.

239.  Defendant Elizalde was exercising his authority as a peace officer with the Santa Barbara County Sheriff's Office in these encounters with Plaintiff.

240.  The sexual harassment, gender violence, false imprisonment, sexual assaults and batteries resulted from the use of Defendant Elizalde's authority as a peace officer.

241.  Hence, Defendant Elizalde was acting under color of state law.

FIRST AMENDED COMPLAINT - 39

242. The acts of Defendant Elizalde deprived Plaintiff of her rights under the U.S. Constitution, including her rights under the Fourth and Fourteenth Amendments.

243. On information and belief, Defendant Elizalde acted pursuant to an expressly adopted official policy or widespread or longstanding practice or custom of Defendant County.

244. On information and belief, Defendant Santa Barbara County law enforcement has a code of silence that protects Sheriff's Deputies from investigation and consequences from wrongdoing.

245. On information and belief, Defendant Santa Barbara County law enforcement has a code or culture of silence that emboldens Sheriff's Deputies in committing wrongdoing.

246. On information and belief, Defendant Santa Barbara County law enforcement has a code or culture of silence that sends a clear message to crime victims that Santa Barbara County will work to protect their own from investigation and the consequences of wrongdoing.

247. On information and belief, Defendant Santa Barbara County law enforcement continued to use the recruitment video to promote

FIRST AMENDED COMPLAINT - 40

Defendant Elizalde's association with the Sheriff Office as part of its code or culture of silence by sending a clear message to crime victims that Santa Barbara County will work to shield their own from investigation and protect them from the consequences from wrongdoing.

248. On information and belief, Defendant Santa Barbara County's code or culture of silence was furthered by Defendant County's failure to properly supervise Defendant Elizalde thereby sending a clear message to Sheriff's Deputies that they are largely immune from investigation and from facing the consequences of their actions.

249. Defendant County's official policy or widespread or longstanding practice or custom caused the deprivation of Plaintiff's rights by Defendant Elizalde.

250. That is, Defendant County's official policy or widespread or longstanding practice or custom is so closely related to the deprivation of Plaintiff's rights as to be the moving force that caused the ultimate injury.

251. Plaintiff suffered personal injury and damages as a result of Defendant's conduct in an amount to be proven at trial.

FIRST AMENDED COMPLAINT - 41

## CLAIM II – 42 U.S.C. § 1983 (DEFENDANT ELIZALDE)

252.  Plaintiff hereby alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 236 above, inclusive.

253.  At all times relevant herein, Defendant Elizalde was acting under color of state law and color of authority, using his power as a Sheriff's Deputy with the Santa Barbara County Sheriff's Office in his encounters with Plaintiff Jane Doe.

254.  Defendant Elizalde used his position of power and influence with the Sheriff's Office to intimidate, coerce, harass, assault, and sexually batter Plaintiff.

255.  When Defendant Elizalde, while in his Deputy uniform, acting as a Sheriff's Deputy with the Santa Barbara County Sheriff's Office, and wielding his government-issued firearm, intimidated, coerced, harassed, assaulted, and sexually battered Plaintiff, he violated Plaintiff's right to be secure in her person and free of interference with her bodily integrity as guaranteed by the Fourteenth Amendment.

FIRST AMENDED COMPLAINT - 42

256.  When Defendant Elizalde, while in his Deputy uniform, acting as a Sheriff's Deputy with the Santa Barbara County Sheriff's Office, and wielding his government-issued firearm, intimidated, coerced, harassed, and sexually assaulted and battered Plaintiff, he violated her right to be secure in her person against unreasonable searches and seizures as guaranteed under the Fourth Amendment of the U.S. Constitution.

257.  Sexual assault, harassment, and sexual battery, by their very nature, involve conduct that is excessive and unreasonable and cannot be warranted or justified under any circumstances.

258.  As a direct and legal consequences of Defendant Elizalde's conduct, Plaintiff suffered personal injury and damages as a result of Defendant's conduct in an amount to be proven at trial.

## CLAIM III - VIOLATION OF CIVIL RIGHTS (BANE ACT, CAL. CIV. CODE § 52.1) (ALL DEFENDANTS)

259.  Plaintiff hereby alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 236 above, inclusive.

260.  Defendant Elizalde intentionally interfered with Plaintiff's civil rights by intimidation or coercion.

FIRST AMENDED COMPLAINT - 43

261.  Defendant Elizalde acted violently against Plaintiff to prevent her

from exercising her right to be free from unlawful seizures and her

substantive due process rights.

262.  Plaintiff was harmed.

263.  Defendant Elizalde's conduct was a substantial factor in causing

Plaintiff's harm.

264.  Defendant County of Santa Barbara is vicariously liable for

Defendant Elizalde's actions given that his "tortious conduct is

broadly incidental to the enterprise of law enforcement." *See Mary M.*

*v. City of Los Angeles*, 54 Cal.3d 202, 218 (1991).

265.  Plaintiff suffered personal injury and damages as a result of

Defendants' conduct in an amount to be proven at trial.

**CLAIM IV - VIOLATION OF CIVIL RIGHTS (RALPH ACT - CAL. CIV. CODE § 51.7) (ALL DEFENDANTS)**

266.  Plaintiff hereby alleges and incorporates by reference each and

every allegation contained in paragraphs 1 through 236 above,

inclusive.

267.  Defendant Elizalde committed violent acts against Plaintiff.

268.  A substantial motivating reason for Defendant Elizalde's conduct

was Plaintiff's sex.

FIRST AMENDED COMPLAINT - 44

269. Plaintiff was harmed.

270. Defendant Elizalde's conduct was a substantial factor in causing Plaintiff's harm.

271. Defendant County of Santa Barbara is vicariously liable for Defendant Elizalde's actions given that his "tortious conduct is broadly incidental to the enterprise of law enforcement." *See Mary M. v. City of Los Angeles*, 54 Cal.3d 202, 218 (1991).

272. Plaintiff suffered personal injury and damages as a result of Defendants' conduct in an amount to be proven at trial.

## CLAIM V - VIOLATION OF CIVIL RIGHTS (UNRUH ACT - CAL. CIV. CODE § 51) (ALL DEFENDANTS)

273. Plaintiff hereby alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 236 above, inclusive.

274. Defendant Elizalde denied full and equal privileges to Plaintiff.

275. A substantial motivating reason for Defendant Elizalde's conduct was his perception of Plaintiff's sex.

276. Plaintiff was harmed.

277. Defendant Elizalde's conduct was a substantial factor in causing Plaintiff's harm.

FIRST AMENDED COMPLAINT - 45

278.  Defendant County of Santa Barbara is vicariously liable for Defendant Elizalde's actions given that his "tortious conduct is broadly incidental to the enterprise of law enforcement." *See Mary M. v. City of Los Angeles*, 54 Cal.3d 202, 218 (1991).

279.  Plaintiff suffered personal injury and damages as a result of Defendants' conduct in an amount to be proven at trial.

### CLAIM VI - VIOLATION OF CIVIL RIGHTS-GENDER VIOLENCE (CAL. CIV. CODE § 52.4(C)) (DEFENDANT ELIZALDE)

280.  Plaintiff hereby alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 236 above, inclusive.

281.  Defendant Elizalde created physical intrusions of a sexual nature on Plaintiff.

282.  Defendant Elizalde's physical intrusions of a sexual nature were under coercive conditions.

283.  Plaintiff suffered personal injury and damages as a result of Defendant Elizalde's conduct in an amount to be proven at trial.

FIRST AMENDED COMPLAINT - 46

## CLAIM VII - VIOLATION OF CIVIL RIGHTS-SEXUAL HARASSMENT (CAL. CIV. CODE § 51.9) (DEFENDANT ELIZALDE)

284. Plaintiff hereby alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 236 above, inclusive.

285. Plaintiff sought the professional assistance of Defendant Elizalde as a Sheriff's Deputy.

286. Defendant Elizalde made sexual advances, sexual solicitations, sexual requests, and/or demands for sexual compliance to Plaintiff.

287. These sexual advances, sexual solicitations, sexual requests, and/or demands for sexual compliance were unwelcome and pervasive or severe.

288. Defendant Elizalde engaged in physical conduct of a sexual nature based on gender.

289. This physical conduct of a sexual nature based on gender was unwelcome and also pervasive or severe.

290. Plaintiff suffered personal injury and damages as a result of Defendant Elizalde's conduct in an amount to be proven at trial.

FIRST AMENDED COMPLAINT - 47

## CLAIM VIII – ASSAULT (ALL DEFENDANTS)

291. Plaintiff hereby alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 236 above, inclusive.

292. Defendant Elizalde acted, intending to cause offensive contact.

293. Plaintiff reasonably believed that she was about to be touched in a harmful manner.

294. Plaintiff did not consent to the offensive contact by Defendant Elizalde.

295. Plaintiff was harmed.

296. Defendant Elizalde's conduct was a substantial factor in causing Plaintiff's harm.

297. Defendant County of Santa Barbara is vicariously liable for Defendant Elizalde's actions given that his "tortious conduct is broadly incidental to the enterprise of law enforcement." *See Mary M. v. City of Los Angeles*, 54 Cal.3d 202, 218 (1991).

298. Plaintiff suffered personal injury and damages as a result of Defendants' conduct in an amount to be proven at trial.

FIRST AMENDED COMPLAINT - 48

## CLAIM IX – SEXUAL BATTERY (ALL DEFENDANTS)

299. Plaintiff hereby alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 236 above, inclusive.

300. Defendant Elizalde intended to cause an offensive contact with Plaintiff's sexual organ and breast and a sexually offensive contact with Plaintiff resulted.

301. Defendant Elizalde intended to cause an offensive contact with Plaintiff by use of Defendant Elizalde's penis and a sexually offensive contact with Plaintiff resulted.

302. Plaintiff did not consent to the touching.

303. Plaintiff was offended by Defendant Elizalde's conduct.

304. Defendant County of Santa Barbara is vicariously liable for Defendant Elizalde's actions given that his "tortious conduct is broadly incidental to the enterprise of law enforcement." *See Mary M. v. City of Los Angeles*, 54 Cal.3d 202, 218 (1991).

305. Plaintiff suffered personal injury and damages as a result of Defendants' conduct in an amount to be proven at trial.

FIRST AMENDED COMPLAINT - 49

## CLAIM X – FALSE IMPRISONMENT (ALL DEFENDANTS)

306.  Plaintiff hereby alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 236 above, inclusive.

307.  Defendant Elizalde intentionally deprived Plaintiff of her freedom of movement by use of force.

308.  That wrongful restraint compelled Plaintiff to stay somewhere for some appreciable time, however short.

309.  Plaintiff did not consent.

310.  Plaintiff was actually harmed.

311.  Defendant Elizalde's conduct was a substantial factor in causing Plaintiff's harm.

312.  Defendant County of Santa Barbara is vicariously liable for Defendant Elizalde's actions given that his "tortious conduct is broadly incidental to the enterprise of law enforcement." *See Mary M. v. City of Los Angeles*, 54 Cal.3d 202, 218 (1991).

313.  Plaintiff suffered personal injury and damages as a result of Defendants' conduct in an amount to be proven at trial.

FIRST AMENDED COMPLAINT - 50

## CLAIM XI – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (ALL DEFENDANTS)

314. Plaintiff hereby alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 236 above, inclusive.

315. Defendant Elizalde's conduct in grooming and then sexually harassing, assaulting, and sexually battering Plaintiff was outrageous.

316. Defendant Elizalde intended to cause Plaintiff emotional distress.

317. Plaintiff suffered severe emotional distress from her interactions with Defendant Elizalde.

318. Defendant Elizalde's conduct was a substantial factor in causing Plaintiff's severe emotional distress.

319. Defendant County of Santa Barbara is vicariously liable for Defendant Elizalde's actions given that his "tortious conduct is broadly incidental to the enterprise of law enforcement." *See Mary M. v. City of Los Angeles*, 54 Cal.3d 202, 218 (1991).

320. Plaintiff suffered personal injury and damages as a result of Defendants' conduct in an amount to be proven at trial.

FIRST AMENDED COMPLAINT - 51

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jane Doe prays that the Court enter judgment against Defendants, awarding her:

321. Compensatory damages for emotional harm in an amount to be proven at trial;

322. Special damages;

323. Punitive damages against Defendant Elizalde, as allowed by law;

324. Reasonable attorneys' fees, expert witness fees, and costs pursuant to, among other things, Cal. Civ. Code § 52; 42 U.S.C. § 1988;

325. Pre- and post-judgment interest at the maximum rate allowed by law;

326. Damages to make up for any adverse tax consequences for any award to Plaintiff Jane Doe; and

327. Such other relief as this Court may deem appropriate.

Respectfully submitted,

DATED: August 9, 2024        */s/Timothy A. Scott*
                            Timothy A. Scott
                            MCKENZIE SCOTT PC
                            *Attorneys for Jane Doe*

FIRST AMENDED COMPLAINT - 52

Email:
mmckenzie@mckenziescott.com
tscott@mckenziescott.com
njimenez@mckenziescott.com

FIRST AMENDED COMPLAINT - 53